IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:11-CR-25-BR

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PERRY RASHAWN WILKINS | ORDER |

This matter is before the court on defendant's motion for compassionate release. (DE # 122.)

In 2011, petitioner pled guilty to one count of interference with commerce by robbery ("Hobbs Act robbery"), and aiding and abetting the same, in violation of 18 U.S.C. §§ 2 and 1951 and one count of using a firearm during and in relation to a crime of violence (specifically the Hobbs Act robbery in the other count), and aiding and abetting the same, in violation of 18 U.S.C. §§ 2 and 924(c).[1] The court sentenced petitioner to a total term of 166 months imprisonment. Petitioner did not appeal.

In October 2020, defendant filed the instant motion *pro se*. Pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019), the court appointed counsel to represent defendant for purposes of such a motion. Appointed counsel filed a memorandum in support of defendant's motion. (DE # 135.) The government filed a response in opposition. (DE # 137.) Later, in

---

[1] In a letter to the court, defendant states that it is his understanding the Fourth Circuit Court of Appeals recently ruled Hobbs Act robbery is not a crime of violence, (DE # 145), suggesting his § 924(c) conviction for the firearm offense is no longer valid. Under Fourth Circuit case law, Hobbs Act robbery remains a crime of violence for purposes of § 924(c). See United States v. Simmons, No. 20-4337, 2021 WL 5055847, at *1 (4th Cir. Nov. 1, 2021) ("[W]e have held that 'Hobbs Act robbery constitutes a crime of violence under the force clause of [§] 924(c),'" (quoting United States v. Mathis, 932 F.3d 242, 266 (4th Cir. 2019) (alteration in original))). (See also 9/27/19 Order, DE # 97 (dismissing defendant's 28 U.S.C. § 2255 motion raising this claim), appeal dismissed, DE # 103.)

response to the court's order, the government filed defendant's sentence computation data and inmate discipline data. (DE # 141.) Defendant's mother has provided a letter in support of his release. (DE # 125.)

Defendant seeks a reduction in his sentence to time served or to convert a portion of the remainder of his custodial sentence to home confinement as a special condition of supervised release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018 ("First Step Act").[2] That statute provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>    (1) in any case—
>       (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>          (i) extraordinary and compelling reasons warrant such a reduction . . .
>       and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c).

The Sentencing Commission has not issued a policy statement applicable to motions filed by defendants under this statute.[3] United States v. McCoy, 981 F.3d 271, 275 (4th Cir. 2020).

---

[2] The First Step Act amended § 3582(c)(1)(A) to permit a defendant to bring such a motion. See Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (2018).
[3] The policy statement contained in U.S.S.G. § 1B1.13 "addresses only BOP-filed motions." United States v. High, 997 F.3d 181, 186 (2021). Nonetheless, it "'remains helpful guidance even when motions are filed by defendants.'" Id. (quoting McCoy, 981 F.3d at 282 n.7). Relevant here, "[w]ith respect to medical conditions, [extraordinary and compelling] reasons include that 'the defendant is suffering from a terminal illness' or 'the defendant is . . . suffering from a serious physical or medical condition.'" Id. (quoting U.S.S.G. § 1B1.13 cmt. 1(A)(i), (ii)) (alterations omitted). Regarding family circumstances, such reasons include "the death is incapacitation of the defendant's minor child . . . ." U.S.S.G. § 1B1.13 cmt. 1(C)(i).

2

"[A]s a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" Id. at 284 (citation omitted) (emphasis added).

In deciding whether a sentence reduction is appropriate, the court must also consider the applicable § 3553(a) factors. 18 U.S.C. § 3582(c)(1)(A).

> Those factors include "the nature and circumstances of the offense"; "the history and characteristics of the defendant"; "the need to avoid unwarranted sentence disparities"; and the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with . . . training, medical care, or other correctional treatment in the most effective manner."

United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) (citing 18 U.S.C. § 3553(a)).

Here, the government acknowledges that defendant has satisfied § 3582(c)(1)(A)'s threshold requirement. (See Resp., DE # 137, at 3.) Therefore, the court will consider the merits of defendant's motion.

Defendant requests that the court reduce his sentence based on his increased risk of severe illness from COVID-19 due to his medical conditions and race and based on family hardship. (Mot., DE # 122, at 1, 6; Mem., DE # 135, at 1-2, 4, 6.) He argues that his release is consistent with the factors set forth in 18 U.S.C. § 3553(a), namely, his role in the offenses, the length of time he has been incarcerated, and his age at the time of the offenses. (Mem., DE # 135, at 8-9). The government opposes any reduction in defendant's sentence. Although it acknowledges that defendant has one COVID-19 risk factor, it contends defendant's criminal history and post-sentencing conduct, the nature and circumstances of the offenses, and the efforts BOP is undertaking to protect inmates from COVID-19 weigh against defendant's release. (Resp., DE # 137, at 16-19.)

"COVID-19 raises medical issues in the prison context that are particularly serious — it is highly communicable; it is aggravated by certain other medical conditions; and it can be

3

lethal." High, 997 F.3d at 185. "[I]n considering whether extraordinary and compelling reasons for a sentence reduction exist in light of COVID-19, [district courts] have considered the age of the prisoner, the severity and documented history of the defendant's health conditions, and the proliferation and status of infections in the prison facility." United States v. Kibble, Criminal Action No. 2:19-00077, 2020 WL 3470508, at *2 (S.D.W. Va. June 25, 2020) (citing United States v. Brady, No. S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (collecting cases)), aff'd, 992 F.3d 326 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021). The Centers for Disease Control and Prevention's ("CDC") list of risk factors for COVID-19 complications also informs the court's evaluation. Everett v. United States, No. 4:16cr35, 2020 WL 5793428, at *3 (E.D. Va. Sept. 25, 2020).

Defendant is a 32-year-old African American. (PSR, DE # 47, at 2.) He has a BMI of 33.1, making him obese, and suffers from random seizures.[4] (Mem., DE # 135, at 2, 4.) According to the CDC, being obese can make one more likely to get severely ill from COVID-19. See CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Jan. 20, 2022). "COVID-19 data shows that Black/African American . . . persons in the United States experience higher rates of COVID-19-related hospitalization and death compared with non-Hispanic White populations." CDC, Health Equity Considerations and Racial and Ethnic Minority Groups, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html

---

[4] In his *pro se* motion, defendant claims to be "immune compromised" and "suffer[] from multiple chronic conditions." (DE # 122, at 6.) Defendant has not filed any medical records to substantiate any of his claimed medical conditions. His presentence report indicates around the time of sentencing, he was overweight. (See DE # 47, at 2 (height and weight).) The report states, "[Defendant] is healthy and has no known history of health problems." (Id. ¶ 27.) Because the government does not dispute that defendant is obese, the court accepts counsel's representation in defendant's memorandum that defendant has a BMI of 33.1. Also, the court will accept counsel's representation that "BOP medical records also indicate that he suffers from random seizures (and that [h]is daughter does as well)," (Mem., DE # 135, at 4).

4

(footnote omitted) (last visited Jan. 20, 2022). Having seizures—unassociated with an underlying medical condition—is not a risk factor. Cf. CDC, People with Certain Medical Conditions.

At USP Beaumont, where defendant is incarcerated, 1 inmate and 23 staff are positive for COVID-19. BOP, COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Jan. 20, 2022). No inmates have pending tests. BOP, COVID-19 Test Information, https://www.bop.gov/coronavirus/ (last visited Jan. 20, 2022). Approximately 74% of the inmates at the entire Beaumont complex are fully inoculated.[5] BOP, COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/ (last visited Jan. 20, 2022).

As further justification for a reduction in his sentence, defendant relies on the hardship his family is suffering with his continued incarceration. (Mem., DE # 135, at 1.) According to defendant, his grandmother, who is the caretaker of his minor daughter, is of advanced age and has high blood pressure. (Id.; see also Mot., DE # 122, at 1; 1/13/21 Letter, DE # 134, at 2; 10/18/21 Letter, DE # 153.) Relying on the fact that being an older adult and possibly having high blood pressure can increase one's risk of getting severely ill from COVID-19, see CDC, People with Certain Medical Conditions, defendant contends that his release "would enable him to help her out in ways that could help her reduce her exposure to the [] virus," (Mem., DE # 135, at 1), and would avoid his daughter going into foster care, should she (his grandmother) contract the virus and not recover, (Mot., DE # 122, at 1).

Considering defendant's age and health, the conditions at USP Beaumont, and his family situation, the court concludes defendant has failed to show that extraordinary and compelling reasons warrant a reduction in his sentence to time served or immediate release to home

---

[5] The record does not reflect defendant's vaccination status.

5

confinement. Even assuming defendant had made such a showing, the court further concludes the § 3553(a) factors do not support reducing his sentence.

Prior to the instant offenses, defendant had been convicted in state court of 10 offenses by age 20, with 3 of those being felony offenses committed when he was 18 and 19. (PSR, DE # 47, ¶¶ 12-20.) He committed the instant offenses at age 21. He served as the getaway driver for his co-defendant, who robbed two convenience stores with a sawed-off shotgun. (Id. ¶¶ 7, 10.) When defendant was arrested one month after the robberies, he was found with a loaded .38 caliber revolver. (Id. ¶ 8.)

Defendant has been incarcerated more than 11 years, or more than 80% of his sentence with good time credit. (See Resp., Ex. 1, DE # 141-1, at 3.) He is enrolled in the residential drug treatment program. (Mot., DE # 122, at 5.) He has committed 10 prohibited acts, with the most recent occurring 2 years ago and being an act the BOP classifies of greatest severity. (Resp., Ex. 2, DE # 141-2.) See also BOP Program Statement 5270.09, Inmate Discipline Program, Table 1 (Aug. 1, 2011).

Given defendant's criminal history, the nature and circumstances of the instant offenses, and defendant's commission of numerous prohibited acts while incarcerated, the court concludes reducing defendant's term of imprisonment would not reflect the seriousness of the offenses, provide just punishment, or deter crime. Defendant's motion for compassionate release is DENIED.

This 21 January 2022.

_____
W. Earl Britt
Senior U.S. District Judge